May it please the court, my name is Rebecca Pennell from the Federal Defenders of Eastern Washington. I represent Benjamin Grote. There were two searches that took place in this case. The invalidity of either one would result in the suppression of the firearm that formed the basis of Mr. Grote's conviction. The first search took place as a result of the DUI stop, and with respect to the DUI stop, I think that Gant was concerned with the issue of limiting the scope of the search, as well as numerous other cases from the Supreme Court. The core concern of the Fourth Amendment is to prevent a generalized rummaging through someone's belongings, a general warrant. The second exception in Gant reads, when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. He was being arrested for DUI. There was some indication that he was under the influence of alcohol, at least so say the police. Why can't the police search his car for evidence that he was drinking, such as an open whiskey bottle? Well, there was no odor of alcohol to suggest that there was an open whiskey bottle. Except on his breath. Except on his breath. But there was no odor in the car. There was a strange odor in the car with respect to an herbal rub, but there was no indication that there was evidence of an open container in the car. What had the officer seen? I thought he'd seen a brown bag. He saw a brown bag. And it would appear that it might contain a bottle. Correct. And if you have somebody arrested for a DWI and there's a brown bag in the car that might contain a bottle, do you think there's any possible connection? Sure. We've agreed they could look at the bottle. And that's why I focused on the particularity requirement. That, sure, there was reason to think, okay, the government wants to say in every DUI case you can look through the entire car. They did not put on one shred of evidence that in every instance it's reasonable to think that people are drinking in their cars. So if you stop someone who's weaving down the road and they step out of the vehicle and they gave every indication of being intoxicated, and you look in the car and you see a brown paper bag, and you open the door and you go to look what's inside the bag, and there are several sticks of dynamite and several guns in plain view, you ignore the guns and the dynamite? No. That's not our case. I'm not saying that that would be improper at all. In this case, it's different because the officer didn't even start by looking at the brown paper bag. He could see the brown paper bag from outside, but then on cross-examination when asked what the first thing he did was, he said he looked under the driver's seat. So we don't have a situation where the officer was doing that. If you look at the California v. Acevedo case by the Supreme Court, it's very similar. There was a brown paper bag in that case that the officers were pretty sure had marijuana in it, and the issue in that case was whether or not they could look in the bag, but the Supreme Court was very clear that they could look in the bag, but only the bag. They had no reason to believe that any other part of the car contained contraband, and the same is true in this case. What the officers could have and should have done was look in the car, look in the brown bag. If they saw something else during that inquiry, then the plain view doctrine would get them further, and perhaps at that point they would develop probable cause to search the rest of the car. So you don't think if, let's say there's no paper bag, then you don't think they could do anything. In other words, they arrest him and they're wanting to see, for evidence purposes obviously, whether there's liquor in the car. I think that's a good point. Where might somebody hide that liquor in the car, perhaps under the seat? Well, that's assuming that people drink in their cars that are driving drunk, and I don't think that that's something we can take judicial notice of. But wouldn't that be unreasonable for an officer to think that might be one of the options? I mean, you could drink and then get in your car and go somewhere, or you might actually not even drink in the car, but you might be transporting an open container from which you had drunk. You might be, and you'd think there'd be some smell of that. What's frustrating in this case is that there was no evidence put on about that. The government had an evidentiary hearing. They could have asked the officers, given that prior to Gantt, these searches took place all the time, how often did you find evidence of drunk driving in a car? Common sense tells to me most adults, at least, and Mr. Grote was clearly an adult, drink in establishments or drink at someone's house and then drive. They aren't necessarily drinking in their cars. Not a particularly comfortable place to drink. But the government had the evidence. Maybe you don't see as many cases as we do. I mean, I don't know why you could draw that. That's not an unreasonable conclusion, but the other one is not unreasonable either for the officer. Well, I think it's speculative. I think it's speculative to think that there is reasonable to believe that you're going to find evidence when there is no indication. And I think that I recall Justice Kennedy's talk at the judicial conference when he talked about the need for law journals to develop empirical evidence, and it made me think of this case, the need for the government to develop evidence to say, look, you know, it really is common for people who have been driving drunk to have evidence in their cars instead of just saying it and asking a judicial panel to take notice of it. Instead, we should have real evidence. We should have officers who have been on the scene. Maybe they would testify. So, in other words, go ahead. Your position is that in this case the officers had reasonable suspicion to enter the vehicle and look at that paper bag. Our position and the district court's position is that it's a probable cause standard to look in the car. You can see that the officer had the constitutional ability to enter the car and look at the paper bag. Correct. But your sort of subposition is that's it. That's the only place he could look. Right. Just like the Acevedo case. That's all they had probable cause for, to prevent a generalized rummaging, which Gantt was concerned with, which the bulk, a lot of Supreme Court precedent is concerned with, the core foundation of the Fourth Amendment. Well, now we've hit upon another potential division in the case, and that is whether Gantt's language of reasonable belief is actually transformed into probable cause. And I take it your position is that Gantt requires probable cause, not something less than that. That's correct. And I think the Gorman case, which the district court relied on, applies that standard. And I think that that's a reasonable inference to make. Once you've arrested someone, you have to have probable cause for that arrest. So there already is a standard of probable cause that is present. When you think of someone who you have probable cause to arrest them for drug dealing, the standard for searching their home is easier than searching a home of someone who's not been arrested. And so although it's not automatic, I do think the probable cause standard, once someone has been arrested, it is a probable cause standard to think, given that they've just been arrested for DUI, is it probable that there's evidence of that crime in the car? It makes sense that it's a probable cause standard. Did the Supreme Court use the word probable? They did not. They used reason to believe like they did in Payton, which this Court used. Reasonable to believe. Right. And this Court in Gorman said that language meant probable cause. Was Gorman a house case? It was. I can't recall. I thought it was a home case, but I could be wrong. I can't recall, Your Honor. I think the focus was on the language. Would you agree that there is a difference between an automobile and a home? Sure. In terms of how the Supreme Court has treated these issues? Because an automobile presents exigencies and excuses a warrant, but it doesn't necessarily excuse probable cause. So the vehicle exception is an important distinction to draw. Just going to the second issue, which I think is very important as well, the district court said that only reasonable suspicion was necessary to seize Mr. Grote's home, and that's just simply inconsistent with Supreme Court case law and this Court's case law. Again, the Supreme Court said when a seizure takes place, it's an exigent circumstance, so we will excuse a warrant, but they don't excuse probable cause. And I think it's clear that the district court didn't think there was probable cause to think their firearm would be found in the home just on the basis of a clip. There was, again, no evidence showing that clips and firearms have to always go together, that they can't be separated, but more importantly in this case, the car was registered to someone else, a female out of Oregon. So there just wasn't that probable standard to think that evidence, that a gun relating to that clip would be found in the house. And we don't even think there was reasonable suspicion, but there certainly was not probable cause to justify seizing that house and procuring Mr. Grote's consent as a fruit of that seizure. Do you want to keep your remaining time for rebuttal? I would like to. Thank you, Your Honor. Good morning. My name is Robert Ellis. I'm an assistant from the Eastern District of Washington. Mr. Grote's case belonged to me from its initial referral to our office. This case can be seen, in one view, as incredibly easy if you adopt the government's approach. And our approach was there was probable cause to search that pickup on the evening of August 14th, and probable cause existed the following evening for the officers to go get a warrant, which they intended to do when Officer Echeverria left the scene. It only becomes slightly more difficult if you disagree with the government and find that there was not probable cause on either one of those occasions. And so that's what I'm going to focus on, is on the presumption that perhaps the panel may not agree with the government on that probable cause issue. And the first event was August 14th in the pickup, and all I can say is there's a flat disagreement between Mr. Grote and the government on whether Gantt requires a showing of probable cause. This is the Supreme Court of the United States. Relatively intelligent people, law degree, several years of judicial experience. Do you want us to inform them about your relative comment, or is that just a passing comment? Just passing comment, Your Honor, sort of. But I would expect that those people and the army of law clerks that work for them know the term probable cause and know what the term reasonable means in other areas of criminal law. They didn't use the term probable cause. Let's say you're right, though. Ms. Pinnell says, well, they might have had even reasonable suspicion to look at the paper bag, but beyond that, over and out, there's no further basis to look for anything. Would you focus on that point? Then let's look at some more of the language in Gantt, Your Honor. The majority opinion specifically quotes Justice Scalia's concurring opinion in Thornton, and his language is reasonable to believe evidence relative to the crime of the arrest might, and I consider that term might to be critical in this case, the analysis of Gantt. And then a little later in the opinion, they say, all those very old cases that Justice Scalia outlined in his concurring opinion in Thornton, those were well before the search-the-incident arrest cases. So they have adopted that language. They have reinvigorated, if you will, some very old cases which authorized search at the time of arrest. Do you think that finding one hard liquor bottle in a brown bag gives reason to believe that there might be another brown bag with some more liquor or some more liquor? I think so, yes, sir. Two-fisted drinker? They have a gentleman who has presented himself as clearly intoxicated. He had trouble controlling the vehicle down the road. He almost tipped that trailer over. He failed all of the physical tests. He had a .21. Yes. I have to admit the officer didn't perform that PBT test exactly according to the protocol. No question about that. It's still a relatively high alcohol rating. But the gentleman also said, no, I haven't been drinking, and that bottle in the brown paper bag was full, but I have taken a Valium, he said. And so it seems to me the officers had a reasonable basis to believe they might find evidence of either alcohol in that vehicle or some other substance which could cause his intoxication. He had told them he had taken pills. The might, to me, is critical. It's completely different than our accepted standard for, if I can find it here. I always misquote this language. The accepted standard for probable cause is fair probability that contraband or evidence of a crime will be found in a particular place. That's incredibly different from Justice Scalia's articulation that it might be found, which has now been adopted by the Supreme Court. I think the court needs to view this, going back and reviewing those very old cases in Justice Scalia's concurring opinion, and accept the fact that the court has reinvigorated some very old law. It is the basis of the search of a person incident to arrest. You are preserving the evidence of the crime for which the individual has been arrested. That's what the court is telling us in Gantt. That's the basis for a Gantt-authorized search, which is different from a Belton and Thornton search. And they say that in Gantt. They say, and I don't normally do this, but I want to read a couple of direct quotes at page 1721. Belton and Thornton permit an officer to conduct a vehicle search when an arrestee is within reaching distance of the vehicle, the danger prong, or it is reasonable to believe the vehicle contains evidence of the offense of arrest, the probable cause standard. Next sentence. Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. And then they list some of those alternatives. The alternative to the Belton, Thornton, or the might be there rule, and one of those alternatives they list is probable cause to believe the vehicle contains evidence of a crime. Your position is that the officer went in the cab of the pickup truck. Yes, sir. He wasn't confined to just look in the paper bag. No, sir, he was not. Okay. If this, I understand it was a truck. It was a pickup, and I believe it was an extended cab kind of pickup, is my recollection. But let's assume it's just a regular sedan. Okay. Could the officer have looked in the trunk? No. Why not? No, because I think that's outside the scope of the very old case law that Justice Scalia has reinvigorated about search incident to arrest. He cites some old cases where you can search the office area where the person sat. How about the glove compartment? I would say yeah. That's okay? I think so. What if it was locked? Pardon me? What if it was locked? Probably not. I think there's some old case law saying a locked container in an office cannot be searched. Okay. Moving on to the following evening, August 15th. Again, if you concur with the government that the officers had probable cause, then we're almost within four corners of MacArthur. You had probable cause, the officers. What was the basis for the probable cause again, if you could articulate that, please? Your Honor, they'd start. They found Mr. Grote the evening of the 14th in the vehicle. I'm not talking about the DUI things now. They found two loaded handguns. They found a magazine for an AR-15 style rifle with rounds in it. In addition, they found loose rounds. I'm sorry, let me back up. Rounds of .223 caliber. They found loose rounds, .223 caliber. I found a bunch of the ammunition in there, but what's in a car that was not registered to him? Is that correct? That's correct. Pulling a trailer. They got a search warrant for the trailer and searched it that night. They found over 1,000 rounds of ammunition in that trailer, including .223 caliber ammunition. Mr. Grote is in possession of two loaded handguns, a magazine for a specific style weapon, and over 1,000 rounds of ammunition. He lives in a motor home at an RV park. It seems to me that that's a fair, logical conclusion, that you're going to find some additional weapons in his motor home, his residence. I have just a little time left. Let me back up. Suppose the panel were to conclude that the search of the cab of the pickup truck was improper. What does that do to the search of the trailer? Probably fail. It's my view that MacArthur does not require actual probable cause. It's a balancing test set forth in MacArthur. And certainly the court quotes at length the reasonable suspicion cases under Terry Stock kind of analysis. But if the officers did not know about the weapons and ammunition in the pickup, they would have no reasonable suspicion at all to believe that there were firearms in the RV. Wait a minute. You're talking about the trailer or the RV?  They'd already searched the trailer. Under a warrant. I thought you said that. I thought that you said under a warrant. I have to think here a moment. No. Mr. Grote gave consent the evening of August 14th to search the trailer. The officers went into the trailer, found concertina wire, there's massive ammunition, some books that aren't on the record for the court. So the search of the truck is bad. That does away with any cause for the search of the trailer where he lived. No. The search of the trailer is still legitimate because that's a consent search. The evening of August 14th, that's a consent search. Because of what they found, the officers backed out, and a detective's plotter got a search warrant the following day. But officers were already aware of concertina wire, some military manuals with various descriptions, and this well over 1,000 rounds of ammunition. No, but I thought you'd properly conceded this. If the entire contents of the search of the cab of the pickup truck is gone, it violates cancel, whatever. I did concede. I'm going to retract that concession, if you will, because they still have the trailer. What cause would they have had the next day to search the trailer where he lived? What would be the source of the cause? The well over 1,000 rounds of various caliber ammunition in the trailer, concertina wire, and this plethora of books, various military things, how to kill somebody silently. I don't think that's part of this court's record, but we can supplement the record. It all came out at sentencing. I think we have you argued in mind. Thank you. Briefly, with respect to the Wong-Sung analysis, it's our position that if there was an illegal search, everything after that was tainted, including any consent for either the trailer or the RV. And Mr. Ellis talked about Justice Scalia's concurrence to Thornton, and I think that that concurrence, the old cases that he cited, support our position. The Rabinowitz case is the case that talked about the search of the office, where Scalia cited that case. And in Rabinowitz, they emphasized there was probable cause to search the entire small office for evidence of the white-collar crimes that the defendant had been arrested on a warrant with. So Scalia said that that was proper. Scalia said, quoting him in a different place, says in Thornton, the vehicle search incident to arrest is ipso facto reasonable in two circumstances, when, one, the object of the search is evidence of the crime for which an arrest has been made, or another crime that the officer has probable cause to believe occurred. To me, he's treating those two as very similar. So the object has to be evidence of the crime of arrest. Here, that would be the paper bag, but limited to the paper bag. Thank you. Thank you, Your Honor. The case just argued of United States v. Grote is submitted.
judges: Hawkins, McKeown, Bea